## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| ROBERTO IFILL, <br> 1654 University Blvd <br> Silver Spring, MD.20902-3649 <br> Plaintiff, <br><br> v. <br><br> JOHN E. POTTER, <br> POSTMASTER GENERAL, <br> UNITED STATES POSTAL SERVICE <br> Capital Metro Area Law Office <br> 400 Virginia Avenue, SW, Suite 650 <br> Washington, DC 20024-2730 <br> Defendant, | ) <br> ) Civil Case No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff, Roberto Ifill ("Ifill"), by and through the undersigned counsel, submits the following Complaint pursuant to Rule 15 of the Fed. R. Civil Proc. alleging the following:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant, John E. Potter, Postmaster General of the U.S. Postal Service, for sexual harassment, retaliatory conduct and adverse action, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981.

2. Plaintiff Roberto Ifill is an adult individual working at a branch of the U.S. Postal Service located in Merrifield Virginia.

3. Defendant is John F. Potter, the Postmaster General of the U. S. Postal Service, and certain Supervisors employed at the Merrifield Virginia Post Office, where Plaintiff is employed.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. § 1343(a)(4), and 28 U.S.C. § 1331.  The jurisdiction of this Court is invoked to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 2000e *et seq.*, which provide injunctive and other relief against, *inter alia*, discrimination, sexual harassment adverse/retaliatory actions and unfair treatment in employment.

5. This Court has personal jurisdiction over the Defendant, Agency, as it does business and is headquartered in Washington, D.C.

6. This Court has pendent jurisdiction as to all claims not otherwise the subject of this Court's jurisdiction, if any, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that all State claims that might arise in this case are also related to claims in this action that are within this Court's original jurisdiction as they are part of the same case or controversy under Article III of the United States Constitution.

7. There exists an actual controversy within the jurisdiction of this court within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

8. The amount in controversy exceeds $75,000 exclusive of interest and costs. There exists complete diversity of citizenship between all Plaintiffs on the one hand and all Defendants on the other.

9. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1391(b) & (c).  The Agency's headquarters is located in the District of Columbia.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10. Plaintiff has exhausted his administrative remedies pursuant to 42 U.S.C. § 2000e –

5(f)(3) and has received a "Right to Sue" letter from the EEOC and retained the current

undersigned counsel and filed this suit in the U.S. District Court, District of Columbia.

11. Plaintiff timely filed a discrimination complaint with the U.S. Equal Opportunity

Commission ("EEOC") on or about April 14, 2003, within the required 180 days from the date of

the alleged violation, requesting relief and recovery for damages suffered as a result of the

agency's acts which give rise to this suit.


## BACKGROUND

12. The Plaintiff, Roberto Ifill, works as a Distribution Clerk Level, PS-05, for the U.S

Postal Service, at their Merrifield Virginia branch.

13. Plaintiff's chain of command at the time of the complained incidents were the

following: Karen T. Robinson, Supervisor, Distribution Operations; Evert Turnbull, Manager,

Distribution Operations; Alice M. Jackson, Supervisor, Distribution Operation; and Gregory H.

Marshall, Senior Manager, Distribution Operations.

14. At the time Plaintiff filed his complaint at the EEOC, Plaintiff's immediate

Supervisor was Karen T. Robinson, Supervisor of Distribution Operations.

15. Plaintiff, Roberto Ifill has been employed with the Agency since February of 1984,

over 21 years of employment with the U.S. Postal Service.

16. Karen T. Robinson has been with the Agency since January 1993 and has known the

Plaintiff in the capacity of manager to employee.

3

## COUNT I – TITLE VII SEXUAL HARRASSMENT

17. Paragraphs 1-16 are hereby realleged and incorporated in their entirety

18. The U. S. Postal Service is a Federal entity, and thus subject to the laws of Title VII.

19. Plaintiff is by race Hispanic, color Black and is considered a protected class pursuant to Title VII.

20. Postal Employee, Karen T. Robinson was Plaintiff's direct supervisor at the Merrifield U.S. Postal Office in Merrifield Virginia, during the fall of 1994 until the summer of 1995, and again from June of 2001 until late winter of 2003.

21. Plaintiff has been the victim of sexual harassment by his immediate supervisor, Karen T. Robinson.

22. The sexual harassment began in the year 2001, when Ms. Robinson told Plaintiff that she had a crush on him and also told Supervisor, Charlotte Herndon that she was dating the Plaintiff.

23. This harassment continued when, Robinson approached Plaintiff at work on his automation machine and told him he had a "cute butt."

24. On another occasion, Ms. Robinson gave Plaintiff a kiss on the cheek.

25. On the Plaintiff's forty-sixth Birthday, in March of 2002, he received a card from Ms. Robinson with a picture she drew of his rear end and signed it, "You sweet pain in the butt. Love, Karen." *See* Plaintiff's Exhibit 1, showing a copy of the Birthday Card signature space depicting the Plaintiff's rear end, and her remarks regarding his butt.

26. On March 21, 2002, Plaintiff was again the victim of unwelcome sexual advances when Supervisor Robinson rubbed her groin area against Plaintiff's elbow and pressed against it.

27. The aforesaid alleged sexual conduct took place while Supervisor Robinson was alone with Plaintiff in Room G69 of the Merrifield Postal Facility, and Plaintiff was sitting down reading a form handed to him by Ms. Robinson.

28. More unwelcome sexual advances occurred on September 4, 2002, when Supervisor Robinson attempted to hold hands with the Plaintiff, while Plaintiff requested that she leave him alone.

29. A U.S. Postal Service memo on the subject of sexual harassment was issued in July 2003 and January 2004, which described behaviors that can be construed as sexual harassment. Such behaviors include: verbal comments about an employee's body; physical acts such as touching, hugging, or fondling, and display of visual objects such as sexually explicit pictures. *See* Plaintiff's Exhibit 2 and 3, showing the January 2003 and 2004 memos from the United States Postal Service on the subject of Sexual Harassment.

30. As a result of enduring months of humiliation and sexual harassment, Plaintiff's workplace became a stressful, hostile environment, where Plaintiff could not function normally.

31. As a result of Ms. Robinson's unwelcome sexual advances, Plaintiff transferred out of the automation department where Ms.Robinson had been his supervisor.

32. The U.S. Postal Service Agency has violated Title VII and will continue to violate Title VII if not enjoined and punished.

## **COUNT II- TITLE VII RETALITORY CONDUCT/ADVERSE ACTION**

33. Paragraphs 1-32 are hereby realleged and incorporated in their entirety

34. Plaintiff has been the victim of retaliatory conduct, aside from the above-mentioned retaliatory and adverse action described in paragraphs 1-32, by his immediate supervisor, Karen T. Robinson, over the past four years.

35. This retaliation/adverse action began after Plaintiff let Ms. Robinson know that her sexual and predatory advances were not welcome.

36. Plaintiff believes that Supervisor Robinson repeatedly singled him out for pre-discipline interviews (aka PDI's), for failure to wear his ID badge.

37. The ID badge was hung on a chain, and thus wearing such a device while working on a mail-sorting machine would have placed the Plaintiff in danger of a neck injury.

38. It was common practice among the postal workers to avoid wearing their ID badges, yet only Plaintiff was singled out and reprimanded for such conduct.

39. At one such PDI meeting, several other supervisors and employees were in attendance, and none of the aforesaid employees were wearing their ID badges, including Plaintiff's Supervisor, Robinson.

40. The second of these improper and adverse retaliatory acts involved Plaintiff again being singled out by Ms. Robinson for bringing his personal effects on the mailroom floor and wearing his jacket when he had to go outside to work on the postal deck. *See* Plaintiff's Exhibit 4, showing a letter from the US Postal Employees PL142 at the Merrifield facility, to the U.S. Postal Service establishing other employees did not wear security badges and brought their personal belongings onto the mailroom floor.

41. The third such improper and adverse retaliatory conduct by Plaintiff's Supervisor involved her withholding Plaintiff's time card when he arrived for work, and then improperly ringing in his clock time late.

42. On other occasions Supervisor Robinson marked Plaintiff's time records as late, in advance of his arriving at his job. *See* Plaintiff's Exhibit 5, showing a time record submitted on May 12, 2002, marking the Plaintiff late for the next two days, May 13th and 14th.

43. Before Robinson became his Supervisor, Plaintiff received recognition for his outstanding attendance record and was rewarded with a Postal Umbrella at an outdoor ceremony at the Merrifield Postal Branch.

44. Plaintiff reported this retaliatory conduct and disparate treatment by Ms. Robinson to his Union Shop Steward, Bonita Manago, who confirmed Plaintiff's suspicions about the improper clock rings by Supervisor Robinson. *See* Plaintiff's Exhibit 6, showing a letter from Union Shop Steward, Ms. Manago that describes Supervisor Robinson's admission to falsifying Plaintiff's time records by guessing his arrival time and marking him late.

45. On other occasions, Supervisor Robinson refused to hand Plaintiff his time card to punch in, causing the Plaintiff to work an entire shift without acknowledgement or pay. *See* Plaintiff's Exhibit7, showing a letter from a co-worker averring that Plaintiff was denied his time card by Supervisor Robinson, and was working off the clock.

46. Plaintiff also reported Robinson's adverse conduct and disparate treatment to another Union Shop Steward, Mr. Henry Houston, who confirms the threatening and hostile work environment created by Robinson in his April 5, 2003 Affidavit. *See* Plaintiff's Exhibit 8, showing the April 5, 2003 statement from Union Shop Steward, Henry Houston.

47. Instead of reprimanding or transferring Supervisor Robinson, Shop Steward Houston recommended to Manager of Distributions, Evert Turnbull, to transfer Plaintiff to a different Pay Location, PL 144, even though he did nothing wrong and should have been protected for lodging his complaints against Supervisor Robinson.

48. Plaintiff was transferred out of Ms. Robinson's pay location PL department 142 and is now working in PL Section 144.

49. The above-mentioned acts are in violation of Title VII and amount to improper retaliation/adverse action.

50. Agency has violated Title VII, and will continue to violate Title VII if not enjoined and punished.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests Judgment in favor of Plaintiff for reasons stated in paragraphs 1-50 herein re-alleged and incorporated in their in their entirety and requests the following:

1. Enjoin the Agency from future Title VII violations;

2. ONE HUNDRED THOUSAND DOLLARS ($100,000.00) for emotional distress and damages to Plaintiff.

3. Pursuant to the Civil Rights Act of 1991, 42 U.S.C. 1981, compensatory and punitive damages in the amount of THREE HUNDRED THOUSAND DOLLARS ($300,000.00) and attorney's fees, court costs, out of pocket litigation expenses; and

4. Such other relief as the interest of justice may require.

## JURY DEMAND

Trial by jury is demanded on all triable issues.

4.  Such other relief as the interest of justice may require.

**JURY DEMAND**

Trial by jury is demanded on all triable issues.

DECLARATION OF ROBERTO IFILL

Pursuant to 28 U.S.C. § 1746, I, Roberto Ifill, hereby declare the following:

1.    Being of legal age, I have personal knowledge of the facts stated in the above-
mentioned amended Complaint and know them to be true and correct to the best
of my knowledge.

2.    I am a resident of Maryland, residing at 1654 University Blvd W, Silver Spring,
Maryland 20902-3649.

I declare under penalty of perjury that the foregoing is true and correct to the best of my
knowledge.

Dated this    day of November, 2005 at 11406 Old Georgetown Rd. N. Bethesda,

Maryland, 20852.

Roberto Ifill

Dated:  December 2,  2005          By: _____

                                       Francis H. Koh (DC Bar #486602)

                                       Old Georgetown Law, LLC.
                                       11406 Old Georgetown Rd.
                                       N. Bethesda, MD 20852
                                       (301) 881-3600

                                       Counsel for Plaintiff

# EXHIBIT 1

THIS IS ONE OF ... NOTES THAT WAS GIVEN TO ...
ON THE WORKROOM ... DURING MY TOUR OF DUTY.

But

In the

Love Kala

Sweet

four

19 of 22

EXHIBIT NO. 3

# EXHIBIT 2

MANAGER
CAPITAL METRO OPERATIONS


**UNITED STATES**
**POSTAL SERVICE**

July 2004

CAPITAL METRO EMPLOYEES

SUBJECT: Sexual Harassment

As noted to you, in my first letter approximately one year ago, I will continue to focus on achieving a harassment free workplace in the Capital Metro Area. I know that I have sent you letters regarding sexual harassment and you have also received letters from Headquarters. I have heard a few of you say "enough already!" Unfortunately, we still need to address this issue.

Sexual harassment is against the law. In addition, sexual harassment and inappropriate behavior create an atmosphere that is not conducive to maintaining a professional, productive workplace. Employees subjected to, and even witness to, sexual harassment may not be as effective in their jobs. The bottom line is that sexual harassment hurts our employees and hurts the organization. To continue to be valuable to our customers we need to be efficient and productive; we cannot do that if we are not eliminating all sexual harassment.

I have an obligation to constantly impress upon all employees that we are committed to eliminating sexual harassment. I am repeating the message so that it is understood and it is remembered. I am repeating the message so that you know you have recourse and the ability to seek guidance if necessary. I am repeating the message so that everyone hears it loud and clear. The message should be clear; there is no room for sexual harassment in the workplace. Each of us has a responsibility to ensure that this illegal and/or inappropriate behavior is stopped. I have provided you with the proper procedures and policies on handling sexual harassing behavior so that you are well equipped to deal correctly with inappropriate behavior.

I need your help. I encourage you to do the following:

- Read the "Employees' Guide to Understanding Sexual Harassment"!
- If you engage in anything that can be construed as sexual harassment...STOP!
- If you are aware of sexual harassment...REPORT IT!

Be proud and professional. Don't engage in sexual harassment and don't tolerate it!

Jerry D. Lane

MAILING ADDRESS:
16501 SHADY GROVE ROAD
GAITHERSBURG, MD 20898-9998

PHYSICAL ADDRESS:
6 MONTGOMERY VILLAGE AVENUE
SUITE 655
GAITHERSBURG, MD

# EXHIBIT 3



**UNITED STATES
POSTAL SERVICE**

July 2003

CAPITAL METRO EMPLOYEES

SUBJECT: Sexual Harassment

This letter is the first in a series of letters to all Capital Metro employees regarding our commitment to fully enforcing the Postal Service's policy that prohibits sexual harassment in the workplace. In order to do so, we want all of our employees to understand exactly what sexual harassment is and how to spot illegal behavior in the workplace.

**WHAT IS SEXUAL HARASSMENT?** Courts identify workplace sexual harassment as either "quid pro quo" or "hostile environment" sexual harassment. The first type, "quid pro quo" sexual harassment, occurs when a person in authority tries to trade job benefits for sexual favors. It involves the use of power and authority to alter an employee's job conditions or withhold an economic benefit because the employee refuses to submit to the sexual demands. The second type of sexual harassment is referred to as a "hostile environment." It most often is defined as a pattern of continuing unwelcome behavior of a sexual nature that is intended to, or does, unreasonably interfere with an employee's work performance or that creates an intimidating, hostile or offensive work environment.

Some behaviors that may lead to charges of a hostile work environment are:

- Discussing sexual activities
- Telling off-color jokes
- Unnecessary touching
- Commenting on physical attributes

- Displaying sexually suggestive pictures
- Engaging in hostile physical conduct
- Using crude or offensive language
- Using lewd looks or stares

**WHAT SHOULD I DO IF I AM SEXUALLY HARASSED OR LEARN SOMEONE ELSE IS BEING SEXUALLY HARASSED?** If you believe that you are a victim of sexual harassment, tell the person harassing you to stop and report it immediately to your supervisor or to another manager. If you believe that another employee is a victim of sexual harassment, tell your supervisor or another manager what you have seen or heard.

Neither type of sexual harassment will be tolerated in the Capital Metro work environment and we are all responsible to make a concerted effort to stop sexually harassing behavior whenever we become aware of it. If you wish to learn more about this subject, you can review Publication 553, *Employee's Guide to Understanding Sexual Harassment*, available on the Postal Service intranet at http://blue.usps.gov/cpim/ftp/pubs/pub553.pdf or ask your supervisor or another supervisor to provide the guide to you.

I am committed to achieving a harassment free workplace in the Capital Metro Area. Capital Metro Operation's employees continue to provide outstanding service. Let's improve every aspect of our work environment and be the best place in the country to work.

Jerry D. Lane

MAILING ADDRESS
16501 SHADY GROVE ROAD
GAITHERSBURG, MD 20898-9998
301 548-1410
FAX 301 548-1434

PHYSICAL ADDRESS:
6 MONTGOMERY VILLAGE AVENUE
SUITE 655
GAITHERSBURG, MD

**EXHIBIT 4**

Employees PL142
Processing and Distribution Center

**UNITED STATES**
**POSTAL SERVICE**

April 12, 2003

To whom it may concern:

During March, 2002, until present Employees in PL142, other Pay Locations to include Mail Handlers has been seen without Identification but has not been given a Pre-Disciplinary Interview. Some personal belongings remained on the Workroom Floor.

Mark A. Coples

**EXHIBIT 5**

Exhibit No. [handwritten]

**UNITED STATES POSTAL SERVICE®**

# Request for or Notification of Absence

| Employee's Name (Last, First, MI) | Social Security No. | | Date Submitted |
|---|---|---|---|

Installation (For FM leave, show city, state, and ZIP Code)

| | No. of Hours Requested | |
|---|---|---|
| Pay Loc. # / D/A Code | From Date | Hour |
| | Thru Date | Hour |

**Time of Call or Request**

**Type of Absence**
- [x] Annual
- [ ] Carrier 701 Rule
- [ ] LWOP (See reverse)
- [ ] Sick (See reverse)
- [x] Late
- [ ] COP
- [ ] Other:

**Documentation (For official use only)**
- [ ] For FMLA Leave (Certification reviewed)
- [ ] For COP Leave (CA1 on file)
- [ ] For Advanced Sick Leave (1221 on file)
- [ ] For Military Leave (Orders reviewed)
- [ ] For Court Leave (Summons reviewed)
- [ ] For Higher Level (1723 on file)
- [ ] Scheme Training Testing, Qualifying (Memo on file)

Remarks (Do not enter medical information)

| Scheduled Reporting Time | Employee Can Be Reached At (If needed) | Revised Schedule for (Date) | | |
|---|---|---|---|---|
| | | Begin Work | No Call | Approved in Advance |
| | | Lunch-Out | | [ ] Yes |
| | | Lunch-In | | [ ] No |
| | | End Work | | |
| | | Total Hours | | |

I understand that the annual leave authorized in excess of amount available to me during the leave year will be changed to LWOP.

| Employee's Signature and Date | Signature of Person Recording Absence and Date | Approved and Date Notified | [ ] Yes [ ] No |
|---|---|---|---|

**Official Action on Application (Return copy of signed request to employee)**
- [x] Approved, FMLA*
- [ ] Approved, not FMLA*
- [ ] Approved, FMLA Pending Documentation Noted on Reverse
- [ ] Disapproved (Give reason):
- [ ] Ineligible for FMLA (Estimate eligibility date):

*Signature of Supervisor and Date*

☐ Continued on Reverse

PS Form **3971**, April 2001 (Page 1 of 2)

| | | Scheduled Un-Scheduled | | PP | Year |
|---|---|---|---|---|---|
| | Day | | | Init. | Hours |
| | Sat 01 | | | | |
| | Sun 02 | | | | |
| | Mon 03 | | | | |
| | Tue 04 | | | | |
| | Wed 05 | | | | |
| | Thur 06 | | | | |
| | Fri 07 | | | | |
| | Sat 08 | | | | |
| | Sun 09 | | | | |
| | Mon 10 | | | | |
| | Tue 11 | | | | |
| | Wed 12 | | | | |
| | Thur 13 | | | | |
| | Fri 14 | | | | |

**Warning:** The furnishing of false information on this form may result in a fine of not more than $10,000 or imprisonment of not more than 5 years, or both. (18 U.S.C. 1001)

# EXHIBIT 6

November 24, 2002

To whom it may concern,

On or about the end of June 2002, supv. Robinson requested a Pre-Disciplinary Interview for employee Roberto Ifill. Present for the 'PDI' was Roberto Ifill, supv. Karen Robinson and I, Shop Steward Bonita M. Manago. During the 'PDI' supv. Robinson stated employee Ifill had been late on a number of occasions. When it was employee Ifill's turn to speak against the allegations, he stated supv. Robinson was placing him on the clock late. I, shop steward Manago, asked the supervisor if this was a true statement and supv. Robinson replied, "Yes." I informed employee Ifill not to say another word because the supervisor's actions should be bought to the attention of the Inspection Service. Supv. Robinson said she would guess the approximate time to put the employee on the clock. I informed her that this was falsification of time and she could be in a lot of trouble for doing this. Supv. Robinson said nothing in her defense.

No grievance was filed because employee Ifill informed me, he was taking this to another level because the grievance procedure took too long to resolve and he was tired of the harassment and wanted immediate action.

*******End of Statement *******

*Bonita M. Manago*
APWU Shop Steward T-1

EXHIBIT No. 23

**EXHIBIT 7**

To whom It May concern:

I would like to confirm/Verify that Roberto Ifill was working on DBCS #35 on the night of March 14th, 03. He was working on DBCS #35 off of the clock because his supervisor Karen Robinson refused to give him his time card.

Mark A Coples
P/L 142

**EXHIBIT 8**

# Statement

I, Chief Steward Henry Houston, Jr., would like to make the following statement. On three(3) different occasions Supv. Karen Robinson had 'PDIs for employee Roberto Ifill(5/8/02, 9/17/02 and 10/1/02. Each of the 'PDIs' resulted in no discipline being issued to Mr. Ifill. In each of the 'PDIs', Supv. Robinson accused Mr. Ifill of failing to follow instructions, even though it appeared that Supv. Robinson was irritated with Mr. Ifill about issues not concerning the Postal Service. Because of these issues between Mr. Ifill and Supv. Robinson, it appeared that Supv. Robinson exaggerated charges against Mr. Ifill. Because of Supv. Robinson's antics and tactics, Mr. Ifill's work environment became uneasy and threatening. Mr. Ifill began to think that anything he did would create an opportunity for Supv. Robinson to discipline him.

I felt the situation that had been created between a supervisor and an employee had become unstable. So I requested a meeting on 9/18/02 with MDO E. Turnbull to rectify the problem. Mr. Ifill explained the problems he was having with Supv. Robinson. MDO Turnbull said he would investigate the issues.

*Henry Houston*

4-5-03

13